**Penelope SIEBERN, et al.,
Plaintiffs-Appellants,**

v.

**MISSOURI–ILLINOIS TRACTOR & EQUIPMENT CO., and International Harvester Co., Defendants-Respondents.**

No. 49904.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 20, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 19, 1986.

Application for Transfer Denied
July 15, 1986.

Stephen H. Ringkamp, St. Louis, for plaintiffs-appellants.

Ronald C. Willenbrock, St. Louis, for Missouri-Illinois Tractor & Equip. Co.

Joseph M. Kortenhof, St. Louis, for Intern. Harvester Co.

KAROHL, Presiding Judge.

Plaintiffs appeal after verdict and judgment for defendants in a wrongful death claim based on strict liability for defective design or construction of a coal loader. We reverse and remand.

Decedent Brad Siebern was a coal equipment operator for Union Electric at its Labadie Plant. He was killed on August 13, 1980, while driving a D–500 front end coal loader ("dozer") manufactured by defendant International Harvester (IH), and sold to Union Electric by defendant Missouri-Illinois Tractor and Equipment Company. Brad Siebern was crushed when the dozer he was operating rolled or fell off a coal field ledge approximately eight or ten feet high. The ledge in a field of coal was

unmarked and difficult to see. Brad Siebern backed the dozer off the ledge. It rolled or fell off the ledge to land on its top. He was trapped underneath. This particular dozer was manufactured in April, 1969, although IH had manufactured the D–500 model since 1961. The dozer had a weather cab but no rollover protective structure (ROPS) or seat belts. The D–500 dozer weighed 145,000 pounds.

Decedent was survived by his wife, Penelope, and daughter, Kristen. They sued for wrongful death based on strict liability in tort, claiming that this dozer had been defectively designed because defendant IH had failed to design or provide any ROPS or seatbelts and that defendant Missouri-Illinois had sold this machine to Union Electric in the same defective condition.

Each side produced two expert witnesses. Plaintiffs' experts testified that the dozer was used as reasonably anticipated and was unreasonably dangerous as designed because it lacked any ROPS. The parties agreed that a ROPS was technologically feasible at manufacture, but defendants' experts testified that the D–500 dozer was so stable that no ROPS was reasonably required (it could not rollover) and that no ROPS would have survived such a fall in any event (it did not roll over, but fell on its top which would have crushed a ROPS if provided).

Plaintiffs appeal claiming error in rulings on seven evidentiary points and on one ruling of law: (1) sustaining objections to plaintiffs' experts' testimony that the dozer was "defective" without a ROPS on the grounds that such testimony invaded the province of the jury; (2) precluding plaintiffs from offering a ROPS design plan, discovered in IH's files, as an exhibit on cross-examination of defendants' experts and on direct examination of their own; (3) allowing defendants' experts to testify on direct examination about outside independent ROPS studies conducted before the accident; (4) allowing defendants' experts to testify that the D–500 model dozer had not had any other rollover accidents; (5) allowing defendants' experts to compare frequency statistics of auto accidents to those of this dozer; (6) allowing defendants' expert to base his testimony regarding survivability of this type of accident on "the literature"; and (7) allowing defendants to cross-examine Union Electric supervisory personnel regarding prior complaints and warnings about the ledge over which the dozer fell. Plaintiffs also assert error in failing to declare a mistrial after defendant IH's counsel explained that law suits could be separate recoveries "on top of" Workman's Compensation during voir dire.

We find the first point dispositive and requires retrial. Accordingly, we discuss that point as well as the additional issues which may arise on retrial.

Plaintiffs first contend that it was error to exclude the expert testimony of both experts that the D–500 dozer was "defective" as designed and manufactured without a ROPS. There was evidence that the manufacturer possessed a design for a ROPS when the D–500 was manufactured and could have been installed at a cost of about $2,500. However, the issue was more complicated than considerations of known technology and reasonable costs.

Defendants contend that any practical ROPS design, if manufactured and installed, would have been useless because the D–500 could not tip over in its ordinary use, and if it did, the ROPS would have been ineffective to protect an operator—particularly in the present case. Defendant contended the mass (weight) of the D–500 was so great that although an adequate ROPS was theoretically possible, it was not practicable because the construction of a "safe" ROPS would require an equally massive and overly weighty unit which would create more operational problems or dangers than it would solve.

Plaintiff's theory was that the possibility of a rollover could have been anticipated, as, for example, if there was a collapse in the middle of a coal field; that an effective ROPS could have been installed according to an existing design; and, failure to pro-

vide a ROPS made the dozer defective in design.

■ Plaintiffs called two experts, Donald Gibson and John Sevart. Plaintiffs asked both experts if they had an opinion as to whether or not the D–500 in question was "defective." Defendants' objection on grounds that the question invaded the province of the jury was sustained. However, both experts were permitted to testify that the dozer was "unreasonably dangerous." Plaintiff's contention of error in excluding expert testimony on the question of "defective" may be reviewed only as to its second expert, John Sevart. Although the trial court sustained defendants' objection and prohibited plaintiffs' expert Gibson from offering an opinion of "defective," we do not review the claim of error as to this witness for two reasons. First, defendant Missouri-Illinois Tractor asked plaintiffs' witness Gibson on cross-examination if the D–500 was "defective" and received an answer that it was defective. As a result, plaintiffs had the benefit of the testimony they sought. Second, there was no offer of proof to preserve the claim of error in the acceptance or rejection of expert testimony. *Madget v. Jenkins*, 461 S.W.2d 768, 772 (Mo.1971).

Plaintiffs preserved their claim that expert Sevart's opinion of "defectiveness" was erroneously disallowed by making this offer of proof:

This relates to the question as to whether Mr. Sevart has an opinion that the D–500 without the rollover protective structure deviated from sound engineering practice and was thereby defective, and if allowed to testify he would testify that yes, the D–500 was in fact defective, and he's going to give his opinion therefore with regard to the availability, sur-

vivorability in this type of accident. That's the record I want to make.[1]

■ The law on this issue, including the standard of review, is found in *Housman v. Fiddyment*, 421 S.W.2d 284, 289 (Mo. banc 1967). The court there said,

When jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid the courts out of necessity admit the testimony of experts in the field. Allowing an expert to give an opinion upon a subject of inquiry, instead of requiring that the witness give only *facts,* is an exception to the general rule that witnesses must state facts. "The exception is found from necessity." (citations omitted) The classic statement of the rule applied in determining whether expert testimony should be admitted into evidence (quoted in the above decisions) is that expressed in *Benjamin v. Metropolitan St. Ry. Co.*, 133 Mo. 274, 34 S.W. 590, 593 more than seventy years ago: "It is the province of the jurors to draw an inference and conclusions from the evidence before them. The witnesses, as a general rule, must state facts, from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an intelligent opinion cannot be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule, and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The exception is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is

---

1. Plaintiff had asked witness Sevart:

Q. Sir, let me ask you to assume that the D–500 in this case was manufactured in 1969 without a roll over protective structure and also ask you to assume that, well—to incorporate the prior principles with regard to the type of terrain on which it is anticipated that would be used and ask you whether you have

an opinion based on reasonable engineering certainty as to whether the manufacture and sale of the D–500 without roll over protective system is a deviation from sound engineering practices?

Defendants' objection on grounds, "That isn't a proper issue in the case and invades the province of the jury" was sustained.

clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved."

*Housman,* 421 S.W.2d at 289. The court also stated the proper standard of review on the basis that, "The determination of the question of necessity rests in first instance in the sound discretion of the trial court and his discretion in this respect will not be set aside in the absence of a showing of an abuse of discretion." *Housman,* 421 S.W.2d at 289.

In *Housman,* the court reversed and remanded because it found that expert testimony on "point of impact" in an automobile collision was unnecessary and improperly admitted. The disputed testimony related to subjects not involving the application of principles of physics, engineering, mechanics or other technical fields of science. The jury was held capable of determining automobile point of impact without expert assistance by weighing for itself testimony on vehicle location before impact, various road marks and debris at the scene. The court found that in modern days nearly all jurors are experienced motorists and the contested facts involved an issue on which the jury was "just as capable of reasoning backward from the evidence and making a correct analysis of what happened as is the expert." *Housman,* 421 S.W.2d at 292.

Before applying these principles to the present appeal on the exclusion of expert Sevart's opinion of defect, we look first to the verdict directing instruction which required plaintiffs to prove the D-500 dozer was in "defective condition unreasonably dangerous when put to a reasonably anticipated use ..." The verdict directing instruction requires plaintiffs to prove that the product was: (1) in a defective condition, (2) unreasonably dangerous, and (3) used as reasonably anticipated. Plaintiffs also must show that alternative designs were available, the use of one would have helped plaintiff survive and the defect caused this casualty. There is no logical reason why plaintiff should be able to present expert opinion testimony to aid the

jury on only two of the three ultimate facts; to provide expert opinion that the product was unreasonably dangerous and used as reasonably anticipated but no opinion on any defective condition.

Our decision, however, must be based upon whether the admission of expert testimony of "defect" was necessary because the lay jury did not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help, and if so, whether it was an abuse of discretion to prevent the testimony.

■ We conclude that it was necessary to admit expert testimony on "defectiveness." The requirements of design, the definition of danger, and what may be anticipated in the operation of very large, very powerful and very heavy equipment such as the D-500 dozer are outside the routine experience of the average juror. The physical and mathematical computations necessary to determine what may be a "defect" in a legal sense for purposes of a product liability claim require expertise in the form of skill, training and experience in matters usually considered by physicists and engineers to account for mass, weight, sophisticated construction materials, speed, center of gravity and other concepts relating to heavy machinery or equipment. These are not matters within the common knowledge of a juror. Nor is the question of "defect" meaningful, in the context of a product liability case, unless considered as a condition which caused or contributed to cause the casualty which is the subject matter of the claim. It is altogether unlikely that a lay jury would be able to determine for itself that the absence of a particular ROPS system could or would not resist the stresses and forces of a rollover or fall of a 145,000 pound unit and that absence of such system was "defective." We find that the question was properly asked of a mechanical engineer and it was an abuse of discretion to exclude his answer. It should have been permitted because it addressed an area not within the common knowledge of the jury, and was

critical to plaintiffs' requirement of proof. Counsel for one of the defendants apparently recognized this when cross-examining plaintiffs' first expert on this issue.

■ We do not find the error of exclusion remedied merely because one of plaintiffs' two experts were permitted to express an opinion of defect. We cannot speculate what the jury's view was of either or both of plaintiffs' experts. They were entitled to the testimony of the witness Sevart who believed that the existing technology would have permitted an available and inexpensive ROPS which would have been effective, and that, considering the weight of the machine and its operation, it was manufactured and sold in a "defective" condition. On this claim of error, we reverse and remand for a new trial.

We address the following issues raised by plaintiffs because they are likely to reappear on retrial, not because they necessarily constitute reversible error.

In their second point on appeal, plaintiffs allege error in ruling inadmissible their Exhibit 27. This exhibit was a design drawing of another company of a ROPS made to fit the D–500 dozer, dated before the 1969 manufacture date and produced from IH's files during discovery. Plaintiffs claim this evidence was admissible on cross-examination of defendants' experts to impeach testimony that no ROPS was needed because the dozer was stable and rollover was not reasonably anticipated. Plaintiffs also assert that proposed Exhibit 27 was admissible on direct examination of their experts to establish that a ROPS was feasible and rollover was reasonably foreseeable.

■ We have searched the record and are unable to find any instance beyond inference where plaintiffs sought to introduce Exhibit 27 in their case or made a precise offer of proof when denied admission. Absent specific offer of proof, we cannot review plaintiffs' claim of error on direct examination of their expert. *Madget v. Jenkins,* 461 S.W.2d 768, 772 (Mo.1971). We note that Exhibit 27 may have been admissible on many issues including a

showing that rollover was reasonably foreseeable by others in the industry, but it was not expressly offered by plaintiffs during their case-in-chief for any purpose. Plaintiffs did seek to use Exhibit 27 to impeach defendants' expert on cross-examination and made a precise offer of proof when Exhibit 27 was denied admittance. However, plaintiffs cannot "... as a matter of right, offer in rebuttal evidence which would have been admissible had it been offered in the case in chief, even though it tends to rebut or contradict the opposing party's evidence." *Bean v. Riddle,* 423 S.W.2d 709, 719 (Mo.1968), quoting *Peters v. Dodd,* 328 S.W.2d 603, 610 (Mo. 1959).

■ Plaintiffs' third point avers trial court error in allowing defendants' experts to testify on direct examination regarding the "Woodward Studies," including a film made of those studies. These studies were independently conducted prior to this accident under the authority of the U.S. Bureau of Mines and involved rollover tests of heavy equipment of different sizes and weights. Defendants' brief accurately discusses the issues which plaintiffs raise, and we note only that these studies were properly admitted as a basis for expert opinion because they meet the fundamental requirements of necessity and trustworthiness. *Liberty Financial Management v. Beneficial Data,* 670 S.W.2d 40, 54 (Mo. App.1984).

■ In their fourth claim of error, plaintiffs argue that defendants' expert should not have been allowed to testify that the D–500 model dozer has never been involved in any other rollovers or fatalities because such testimony is irrelevant, prejudicial, misleading and confusing. The usual rule is that evidence of non-occurrence of prior accidents is not admissible over objection on these grounds. Such evidence does not necessarily prove lack of negligence. It proves only absence of other injuries but that may be explained by further evidence that in spite of negligence of defendant other persons were fortunate enough to have avoided injury. Such evi-

dence raises collateral issues which have a tendency to confuse and mislead the jury. *Johnson v. Kansas City Public Service Co.*, 228 S.W.2d 796, 797–798 (Mo.1950). Even in negligence cases there is no absolute rule of admissiblity. 228 S.W.2d at 798. In a products liability case based on defective design and construction there is no absolute rule. Defendants' theory was that the D–500 dozer could not roll over. For that reason the failure to design and construct a ROPS was not a product defect. The disputed evidence tends to support defendants' theory that the non-occurrence of roll over proves impossibility of roll over. Hence, absence of defect. The evidence is secondary to expert opinion that the dozer could not roll over. It appears that such evidence neither raises a collateral issue nor would it have a tendency to confuse the jury. It is relevant to the central issue of liability. *Russell v. Midwestern Homes & Truss, Inc.*, 514 S.W.2d 651, 652 (Mo.App.1974). If accepted by the jury such evidence affirmatively proves safe design. This differs from cases where non-occurrence may or may not prove absence of negligence. The trial court did not err in allowing evidence of no other roll overs which was subordinate to expert testimony of impossibility of roll over.

■ Plaintiffs failed to make proper objection at trial to defendants' evidence comparing auto safety statistics to those of this dozer, which is the subject of their fifth point on appeal. Objections to expert testimony cannot be made for the first time on appeal. *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404 (Mo.App.1983). Statistical evidence of this type should be reviewed carefully by the trial court, comparing prejudice against relevancy and quality of proof. The proponent must establish relevancy and an adequate foundation by showing that the statistics involve comparable circumstances. *See Sturm v. Clark Equipment Co.*, 547 F.Supp. 144 (W.D.Mo. 1982).

■ Finally, we address plaintiffs' claim that the trial court erred in failing to declare a mistrial during voir dire when counsel for defendant IH asked repeated questions regarding Workman's Compensation, at one point asking, "have any of you gone beyond [Workman's Comp. claims] and sued somebody else *on top of* the Workman's Compensation recovery that you may or may not have had?" (our emphasis). Such questions do not require mistrial on the these facts only because plaintiff properly objected and the trial court properly instructed the venirepersons to disregard these statements. Defendant's counsel approached the outer boundaries of permissible inquiry. Repetitive references, and "on top of" questions which imply a double recovery when there is none, should be avoided on retrial.

We reverse and remand.

SIMON and GARY M. GAERTNER, JJ., concur.