James **KOEDDING**, Plaintiff/Appellant,

v.

**KIRKWOOD CONTRACTORS, INC.,** Defendant/Respondent.

No. 60791.

Missouri Court of Appeals, Eastern District. Division Four.

April 27, 1993.

Arthur C. Popham, Jr., Dennis E. Egan, Popham Law Firm, P.C., Kansas City, Herb Price, St. Louis, for plaintiff/appellant.

Paul E. Kovacs, Gary Phillip Paul, Aaron I. Mandel, Brinker, Doyen & Kovacs, Clayton, for defendant/respondent.

CRANE, Judge.

Plaintiff sought damages from defendant for injuries received after diving into a river from a bridge constructed by defendant. The jury returned a verdict in favor of defendant and the trial court entered its judgment thereon. Plaintiff appeals from this judgment, asserting error in the admission of expert testimony. We affirm.

In 1982, two years before the accident in question, defendant Kirkwood Contractors, Inc. (Kirkwood) contracted with Jefferson County to remove a bridge built over the Big River in 1907 and replace it with a new highway bridge. Before beginning the project, Kirkwood hired divers who found numerous steel beams in the river bed about thirty feet downstream from the 1907 bridge and believed to be from a bridge that had collapsed in 1904. Kirkwood informed Jefferson County about the steel. The steel did not interfere with the construction of the new bridge or the removal of the old bridge, and Jefferson County did not ask Kirkwood to remove that steel.

After the project began, Kirkwood discovered another steel structure buried six to ten feet underground that obstructed drilling for the new bridge. Jefferson County issued a change order to remove this structure. The steel which obstructed the construction was removed and the remaining steel was beat below the river bed with a 3,000 pound wrecking ball. After removing the steel, Kirkwood inspected the area, which was under eighteen inches of water, and found nothing more there.

All of the steel pieces from the dismantled 1907 bridge were removed and hauled away. None were put in the river.

On August 26, 1984 plaintiff James Koedding and three companions drove to the recreational area along the Big River to go swimming. After arriving at the recreational area, Koedding, along with one of his companions, William Alvey, walked directly to the bridge built by Kirkwood and climbed onto a guardrail on the downstream side of the bridge to make a dive. Koedding was 6'1" and weighed 175

pounds. In making his dive, Koedding projected himself approximately ten to fifteen feet from the bridge and entered the water head first with arms outstretched at approximately an eighty degree angle. He remembers entering the water and abruptly stopping as a result of hitting something just immediately below the surface. He surfaced and tried to get to shore when his other two companions, James Ball and William Miner, rescued him.

Alvey witnessed the dive from the guardrail. He saw Koedding come to an abrupt stop, never fully disappearing from view, and come back to the surface. Ball and Miner had already jumped off the bridge from the upstream side and were in the water. Miner saw Koedding enter the water and his legs buckle when he was approximately waist deep in the water. When Ball and Miner reached him, Koedding was bleeding from a cut in the center of his head which exposed his skull.

Koedding suffered a fracture of the third cervical vertebra. He was hospitalized for five days and spent four months in a halo brace. This was followed by fusion surgery, after which he returned to work. At the time of trial he still experienced pain and stiffness in his neck and had limited range of motion in his neck.

On October 28, 1988, Koedding filed a petition in the circuit court of the City of St. Louis for personal injuries sustained on August 26, 1984 as a result of his dive off the highway bridge constructed by Kirkwood. Koedding alleged Kirkwood was negligent in the performance of the contract 1) by leaving "existing structures projecting upward from the bottom" of the river which were "concealed" under the surface of the water and 2) by dislodging and pulling up from the river bed portions of the 1904 bridge. Koedding alleged that he collided with either parts of the 1907 bridge that Kirkwood allegedly "pulled from its piers and deposited into the river and left underwater" or a part of the 1904 bridge that Kirkwood allegedly shifted or raised, cut off, and left submerged.

At trial Koedding offered evidence that a week after the accident his companions discovered a rigid steel I-beam projecting upward from the bottom of the river at the location where he entered the water. Kirkwood offered evidence that it did not leave any projecting beams in the river from the dismantled 1907 bridge or from the portion of the 1904 bridge that was the subject of the change order. It also presented evidence from its expert witness, Dr. Leon Kazarian, that Koedding's injury was not caused by hitting a steel beam. Kirkwood also offered evidence that Koedding was negligent in failing to check the depth of the water or the existence of debris in the water.

The jury returned a unanimous verdict in favor of Kirkwood, assessing 100 percent fault to Koedding. The trial court entered judgment on the jury's verdict.

▮ Plaintiff appeals, asserting the trial court "erred in permitting defendant's witness Leon Kazarian, over plaintiff's objection, to express his opinion that, as a cause of his injury, plaintiff did not strike any piece of metal." He asserts the following reasons for error:

1. An expert witness may not express an opinion when the subject matter is of such common knowledge as to invade the province of the jury.
2. An expert witness must base his opinion on facts established by competent evidence, and not upon conjecture and speculation.
3. The question of whether an opinion expressed by an expert witness is based on and supported by sufficient facts or evidence to sustain the same is a question of law for the appellate court.
4. Our courts recognize the unusually effective and strong impression that outstanding expert witnesses make on jurors, and hold illegal and erroneous the misuse of their testimony when it is not properly based on facts in evidence.[1]

---

1. This statement of abstract principles of law does not comply with Rule 84.04(d)'s require- ment that the points relied on state "wherein and why" the trial court erred. *Draper v. Aro-*

Kirkwood responds that the error described in this point was not preserved for review because no timely objections to the admission of the testimony were made on these grounds at trial. We agree.

■■■ At trial Koedding did not object to Dr. Kazarian's opinion testimony on the ground that it invaded the province of the jury. Accordingly, Koedding waived any error in the admission of testimony on this ground. *Chism v. Steffens,* 797 S.W.2d 553, 559 (Mo.App.1990). He first objected to the expert testimony on this ground in his motion for new trial. An objection presented for the first time in a motion for a new trial is not timely. *Spalding v. Monat,* 650 S.W.2d 629, 631 (Mo.App.1981).

■■ Likewise Koedding did not object to Dr. Kazarian's testimony on the ground that it was based on conjecture and speculation or was based on insufficient facts in evidence. In his reply brief Koedding argues that this point was preserved for review by his objection during Dr. Kazarian's voir dire. We disagree.

In an in-chambers discussion during plaintiff's case, Koedding's attorney advised the court that Kirkwood proposed to call Dr. Kazarian to testify to his opinion that Koedding "couldn't have hit steel based on biomechanics of the injury." The trial judge said he would hear voir dire on Dr. Kazarian's qualifications to give his opinion testimony. The judge limited voir dire to Dr. Kazarian's qualifications and did not permit the voir dire to cover the facts of the case. After voir dire, the court found Dr. Kazarian, an expert in the field of orthopedic biomechanics,[2] to be qualified to testify on this subject.[3] Koedding's attorney then stated: "Okay, Your Honor. I want to reserve an objection based on Missouri law. I think this is so speculative that it's really way out there." The court responded: "I can understand your objection. But from what I have heard I believe that this doctor's scientific background is such that he would be permitted to give his opinion." Koedding's objection was based on his position that the field of biomechanics was speculative. His objection cannot be construed to be directed to the sufficiency of the facts supporting an opinion.

When Dr. Kazarian testified before the jury, Koedding's attorney objected to his opinion testimony only on the ground that the expert's testimony was "beyond the

---

*nowitz,* 695 S.W.2d 923, 923–924 (Mo.App.1985). We will *ex gratia* review this point, without condoning its form.

2. Orthopedic biomechanics involves the study of the structure, function, dynamic response and strength of the musculoskeletal system. The study of injury biomechanics is a determination of how much force it takes to injure a particular area of the body.

3. Although not challenged on appeal, Dr. Kazarian's qualifications to testify as an expert in this area were well-established. Dr. Kazarian holds a doctorate in orthopedic biomechanics from the Karolinska Institute in Stockholm, Sweden. The topic of his doctoral dissertation was the dynamic response of the human spinal column. Between 1966 and 1991, Dr. Kazarian was employed by the United States Air Force at the Aerospace Medical Research Laboratories in Dayton, Ohio. As a research engineer, he studied the human response to mechanical forces, regional tolerance to mechanical forces, and the strength of bone to mechanical forces to determine how much load it takes to cause a break in a bone. His work also included accident reconstruction involving stress-related injuries. This work included reassembling the body of an acci-

dent victim, looking at x-rays and determining the direction of the applied load to assess how the load was applied, where the load was applied, why the individual got the injury he sustained, how much force it took, and how such an injury could be prevented. He also identified fractures resulting from airplane ejections, parachute openings, and shock ground landing impact forces.

Dr. Kazarian testified that he has performed thousands of tests on vertebral segments and has investigated several hundred diving accidents. He also testified how he is able to determine from x-rays and medical records the line of fracture, the amount of relative displacement between vertebral body members, and the basic intervertebral disc disruption patterns. From this information, he can identify the type, mode, mechanics, sequence of trauma, load applied to the top of the head, how the load was applied to the top of the head, why certain vertebra broke in a particular manner, and why there is or there is not any type of spinal cord involvement.

He has worked for NASA, in particular on the Challenger disaster, the Soviet space program, various NATO programs, and has been loaned out to many of the major air forces in the world.

scope of his expertise." The objection in full was as follows:

I object, Your Honor. I don't think there's been a basis shown for this man to be able to testify to the type of object [that Koedding's head struck]. That's not what I heard him talk about as far as his expertise. I think it goes beyond the scope of his expertise as I have heard it described.

In his reply brief, Koedding argues that this objection also covered the lack of an evidentiary or factual basis upon which the expert could base his opinion. We disagree. The objection was based only on the ground that the expert's testimony was beyond his scope of expertise.

Since the alleged error raised in point one was not properly preserved for review, we may only review for plain error. Rule 84.13(c). We have examined the plaintiff's contentions and find no error, plain or otherwise.

■ Plaintiff first contends that Dr. Kazarian's testimony improperly invades the province of the jury. Section 490.065 RSMo (Cum.Supp.1989) governs the admissibility of expert testimony. We review a trial court's decision to admit or exclude expert testimony under this statute under an abuse of discretion standard. *Ryan v. Parker*, 812 S.W.2d 190, 194 (Mo.App. 1991). Section 490.065 allows a qualified expert to testify in a civil action "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

In this case, the trial court permitted Dr. Kazarian to testify how the nature of Koedding's fracture ruled out an impact with a steel I-beam. Dr. Kazarian testified to his personal expertise regarding what types of "loading forces" would cause particular types of bone fracture patterns in the skull and vertebra. Based on facts presented into evidence, such as Koedding's height and weight, the distance of the dive, and the fracture patterns in Koedding's x-ray records, Dr. Kazarian stated his opinion that Koedding's injuries were not consistent with striking a "rigid I-beam" because the amount of force that such a dive would have generated would have caused substantially greater and different injuries to his skull and vertebra had the diver's head struck rigid steel. Dr. Kazarian testified that because Koedding's injuries were limited to a lacerated scalp and a fracture of the third cervical vertebra, he had to have hit something deformable that would bend or give upon impact.

■ It is within the discretion of the trial court to admit expert testimony where physical and mathematical computations must be made to draw a conclusion because these are not matters of common knowledge to a juror. *Siebern v. Missouri–Illinois Tractor & Equip.*, 711 S.W.2d 935, 939 (Mo.App.1986). Moreover, such testimony is allowable even if it embraces an ultimate issue to be decided by the trier of fact. Section 490.065 RSMo (Cum.Supp. 1989). The calculation of loading forces and the type of skull and vertebra fractures produced by loading forces are not of such common knowledge as to invade the province of the jury. The trial court did not abuse its discretion in allowing Dr. Kazarian to testify on this subject.

■ Koedding next contends that the opinion testimony was based on speculation and not supported by sufficient facts. Koedding specifically argues that Dr. Kazarian improperly based his opinion that Koedding could not have hit a steel beam on "hearsay evidence" of a "bounce-back" which he "remembered" from testimony he had not heard and that there was no evidence of "bounce-back." This argument is wholly specious.

In the first place, Dr. Kazarian did not use a "bounce-back" theory as the basis for his opinion that Koedding's injury was not caused by striking a piece of rigid metal. Rather, this is a matter that arose on cross-examination when Dr. Kazarian was asked by Koedding's attorney if he understood that no witness could see what happened to Koedding's head after it entered the water. In his reply Dr. Kazarian sought to qualify the assertion embodied in the question by referring to eyewitness testimony "that

there was some sort of bounce-back." Dr. Kazarian described "bounce-back" as the elastic energy of Koedding's body pushing his legs back out after his body came to an abrupt stop.

Moreover, there was evidence in the record of a physical reaction by Koedding as he entered the water. A portion of eyewitness Alvey's deposition had been read into evidence in which he described Koedding entering the water, abruptly stopping and coming "back to the surface." A portion of eyewitness Miner's deposition testimony had also been read to the jury in which he testified that he saw Koedding enter the water and his legs buckle. Dr. Kazarian testified he had read these depositions and interpreted the witnesses' description of this reaction as "bounce-back."

We have examined the transcript, including Dr. Kazarian's testimony and find there was no error, plain or otherwise, in the admission of Dr. Kazarian's testimony. Point one is denied.

█ For his second point plaintiff argues that, apart from the expert testimony, "the greater weight of the evidence" entitled plaintiff to a verdict in his favor. This point is moot because we have found no error in the admission of the expert testimony. Moreover, we do not rule on the weight of the evidence in a jury-tried case. *White v. Otten*, 810 S.W.2d 704, 705 (Mo. App.1991).

The judgment is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.