**Brenda JONES, Plaintiff/Appellant,**

v.

**Regan M. TRITTLER,**
**Defendant/Respondent.**

No. 73902.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 10, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 19, 1999.

Godfrey & Fenlon, Gregory G. Fenlon, St. Louis, Missouri, for appellant.

Bryan Cave LLP, Kenneth J. Mallin, St. Louis, Missouri, for respondent.

PUDLOWSKI, Presiding Judge.

Plaintiff, Brenda Jones (Jones) appeals the trial court's directed verdict, at the close of her evidence, in her personal injury claim against defendant, Regan Trittler. In her appeal, Jones argues the trial court erred in directing a verdict for Trittler because she made a submissible case of negligence on the element of causation. We reverse and remand.

■ Rule 78.07 requires that where a directed verdict is granted in a jury-tried case, a motion for new trial must be filed to preserve for appeal any allegation of error. *Crane v. Drake*, 961 S.W.2d 897, 900 (Mo. App. W.D.1998). The record reveals that Jones did not file a motion for new trial, and therefore, her claim that the trial court erred in directing the verdict was not preserved for appeal. However, Rule 84.13(c) provides that:

> Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

We review here for plain error only. If Jones made a submissible case, the trial court's directed verdict would constitute a plain error affecting substantial rights and a manifest injustice. *Crane,* 961 S.W.2d at 900.

■ In reviewing the trial court's direction of a verdict at the close of plaintiff's evidence, we view the evidence and permissible inferences most favorably to plaintiff, disregard contrary evidence and inferences, and decide whether a submissible case was made. *Schumacher v. Barker,* 948 S.W.2d 166, 168 (Mo.App. E.D.1997). A directed verdict is a drastic action. *Id.* Accordingly, we will reverse the trial court's directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Head v. National Super Markets, Inc.,* 902 S.W.2d 305, 306 (Mo.App. E.D. 1995). The plaintiff may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred. *Id.*

Construed in a light most favorable to Jones, the evidence established that: Trittler owned a motor boat as well as a water craft referred to as a jet ski or "Sea Doo." Trittler kept a tow rope on his boat exclusively for towing the Sea Doo. The tow rope had a metal J-shaped hook on each end, one for attachment to the boat and the other for attachment to the Sea Doo.

On Saturday July 2, 1994, Jones and Jeff Enderle (Enderle) were passengers in Trittler's boat on the Lake of the Ozarks. Trittler operated the boat, Enderle was in the passenger seat and Jones sat in back. Trittler towed the Sea Doo behind the boat. They left the dock at Trittler's home intending to meet friends at a restaurant on another part of the lake. The lake was choppy with two to three foot waves. Trittler observed the Sea Doo as he towed it. There were no complications traveling at lower speeds, but while moving 25 to 30 miles per hour problems were encountered with towing the Sea Doo. The Sea Doo veered between the right and left wakes of Trittler's boat, rolled onto its side and was dragged through the choppy water. When Trittler reduced

the speed of the boat the Sea Doo righted itself in the water.

As Trittler increased the speed to 25 to 30 miles per hour the Sea Doo again rolled onto its side, its line was taut and its nose submerged. The hook and tow line released from the Sea Doo and shot forward into the boat striking Jones on the arm and head. Jones was temporarily blinded, taken to Lake of the Ozarks General Hospital, and transferred by helicopter to the trauma center at University of Missouri–Columbia Hospital. She remained an in-patient for eight days and was treated for a skull fracture and left arm wound. Jones later learned the tow rope detached because the J-hook fastened to the Sea Doo straightened during the towing.

Jones filed suit against Trittler alleging her injuries were the result of Trittler's negligence. At the close of Jones's evidence, Trittler moved for directed verdict contending there was no causal connection between his operation of the boat and Jones's injuries. The trial court sustained Trittler's motion for directed verdict and entered judgment in his favor. Jones appeals. We reverse and remand.

On appeal, Jones argues the trial court erred in directing a verdict in favor of Trittler because she made a submissible case of negligence on the element of causation. A negligence action requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 474 (Mo.App. E.D. 1997). The defendant's conduct must be: (1) the cause in fact; and (2) the proximate, or legal, cause of plaintiff's injury. *Id.* Cause in fact requires finding the event would not have occurred "but for" the defendant's conduct. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 860–61 (Mo. banc 1993).

Trittler contends the "but for" test is not met because a jury could not reasonably infer the speed of the boat caused the J-hook to straighten and tow rope to snap forward, and an expert is necessary to examine the hook to construct detailed physical and mathematical calculations about the accident. Trittler relies on *Koedding v. Kirkwood Contractors, Inc.*, 851 S.W.2d 122 (Mo.App. E.D.

1993). In *Koedding,* the court stated it has the discretion to admit expert testimony where physical and mathematical computations must be made to draw a conclusion on matters not of common knowledge to a juror. *Id.* at 126. *Koedding* held that complex determinations of force and injuries resulting therefrom in a diving accident did not fall within the common knowledge of a juror. *Id.* Trittler argues no juror could reasonably infer the speed of the boat exerted sufficient force to cause the J-hook to straighten, and consequently, without expert testimony there is no evidence that "but for" his speeding the injury would not have occurred.

Jones avers that contrary to *Koedding,* physical and mathematical computations in this case are unnecessary and the jury could decide, based on the evidence presented, that "but for" Trittler's speeding there would have been no incident. Jurors are competent to decide issues of everyday experience without resorting to expert testimony. *Inman v. Bi–State Development Agency*, 849 S.W.2d 681, 683 (Mo.App. E.D. 1993). Jones and Enderle testified Trittler had no difficulty in towing the Sea Doo at a low speed. Jones and Enderle also testified the Sea Doo veered back and forth when the boat traveled 25 to 30 miles per hour, and the Sea Doo stabilized when Trittler slowed down. Jones and Enderle further testified that Trittler again increased the boat speed to 25 to 30 miles per hour, the Sea Doo rolled onto its side, partially submerged and the J-hook and tow line snapped forward striking Jones's left arm and head.

A juror could reasonably infer that towing a submerged Sea Doo at 25 to 30 miles per hour would place substantially more resistance on the J-hook than towing the same Sea Doo stabilized on the surface of the water. An expert is not required because there is sufficient evidence for a jury to reasonably infer that "but for" Trittler's excessive speed under the circumstances, the J-hook would not have straightened under the heightened resistance and Jones's injuries would not have occurred.

Trittler relies on *Biggerstaff v. Nance*, 769 S.W.2d 470 (Mo.App. S.D.1989), to further

allege expert testimony was essential to establish factual causation. In *Biggerstaff,* the plaintiffs alleged their retaining wall collapsed because it did not have steel reinforcing rods. *Id.* at 471. The sole witness did not observe the construction of the wall, and there was "no direct evidence as to what caused the collapse of the wall." *Id.* at 472, 473. The court held expert testimony was necessary to prove the wall was defectively constructed. *Id.* at 473. Contrary to *Biggerstaff,* we have the eyewitness testimony of Jones and Enderle stating that the Sea Doo rolled and partially submerged at 25 to 30 miles per hour and the tow line became rigid. Unlike the case of a collapsed wall, "direct, specific proof of causal connection between excessive speed and injury is unnecessary to establish a submissible case." *Crane v. Drake,* 961 S.W.2d 897, 901 (Mo.App. W.D. 1998). The jury could reasonably infer, based on the testimony, that "but for" Trittler's conduct of speeding there would have been no incident.

Having established that the cause could be established without an expert, we turn to whether Jones demonstrated that Trittler's conduct was the proximate cause of her injuries. Evidence of proximate cause is essential to exclude items that are causal in fact but too far removed from the ultimate injury to provide a basis for liability. *Simonian,* 957 S.W.2d at 475. The test for proximate cause is whether the negligence sets in motion a chain of circumstances leading to the injury. *Id.* The injury must be a reasonable and probable consequence of the act or omission of the defendant. *Callahan,* 863 S.W.2d at 865. This is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct. *Tompkins v. Cervantes,* 917 S.W.2d 186, 190 (Mo.App. E.D.1996). It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result. *Callahan,* 863 S.W.2d at 865. The defendant's negligence need not be the sole cause of the injury; it must be one of the causes without which the injury would not have occurred. *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo. App. E.D.1991).

Trittler contends that even if a jury could reasonably infer the J-hook straightened because of the boat speed, there are other alternative causes for which he is not responsible. Trittler suggests four possible causes for the incident: (1) the Sea Doo hit something in the water, (2) something hit the hook, (3) a rough wave was an intervening cause; or (4) a defect in the hook. Trittler relies on *Kinealy v. Southwestern Bell Telephone Co.,* 368 S.W.2d 400 (Mo.1963), to argue Jones failed to make a submissible case on the question of whether Trittler's speed constituted the proximate cause of the incident. *Kinealy* involved landowners who sued the telephone company for trespass and damages to their land allegedly caused by the cutting of ditches for underground telephone cables. *Id.* at 401. The court held other possible causes were not excluded and that the jurors, inexperienced in technical matters such as ditch cutting, were not given sufficient facts or circumstantial evidence to infer the defendant's responsibility. *Id.* at 404. We find *Kinealy's* result correct in addressing technical issues but this is not a technical matter beyond common knowledge. There is no evidence of other alternative causes and the jurors had sufficient facts or circumstantial evidence to reasonably infer Trittler's responsibility.

The evidence of proximate cause viewed in the light most favorably to Jones reveals the Sea Doo was stable at low speed, but rolled and partially submerged at 25 to 30 miles per hour causing the tow line to become taut. Thus, the straightening of the J-hook, release of the tow rope, and Jones's subsequent injuries are reasonable and probable consequences of Trittler's negligent conduct. The jury could find that Trittler knew or should have known there was an appreciable probability some injury would result. It may reasonably be inferred that Trittler's speeding set in motion a chain of circumstances leading to Jones's injury.

We find that the trial court erred in sustaining Trittler's motion for a directed verdict, as Jones did make a submissible case of negligence on the element of causation. We reverse and remand.

Jones also seeks a ruling with regard to voir dire questions about the occupation of her husband. Jones failed to provide any record upon which we could render a ruling on the subject. Point denied.

The judgment is reversed and remanded for a new trial.

CRANDALL, Judge and AHRENS, Judge, concur.