

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER GEBHARDT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD83786 |
| | ) | |
| AMERICAN HONDA MOTOR CO., INC., | ) | Opinion filed: March 9, 2021 |
| ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF SALINE COUNTY, MISSOURI**
**THE HONORABLE DENNIS A. ROLF, JUDGE**

Division Two: W. Douglas Thomson, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

Christopher Gebhardt ("Gebhardt") appeals from the judgment of the Circuit Court of Saline County granting summary judgment in favor of American Honda Motor Company and Honda of South Carolina Manufacturing (collectively, "Honda") in Gebhardt's suit against Honda alleging strict product liability based on design defect, failure to warn, and negligence. Gebhardt argues the trial court abused its discretion when it excluded Gebhardt's expert under section 490.065, RSMo, and then erred by granting summary judgment based on Gebhardt's failure to offer admissible expert testimony. We affirm.

**Factual and Procedural Background**

On December 12, 2012, Gebhardt was working with his father removing trees on a farm in Saline County as part of their logging business. Shortly after arriving at the farm that day, Gebhardt drove his 2007 Honda Foreman TRX500 FPE all-terrain vehicle ("the ATV") through a creek. As he exited a finger of the creek, a higher area of creek bed created by flash flooding, Gebhardt attempted to drive up the embankment at idle speed. Gebhardt indicated the ground at the embankment was "hard" and "[t]here wasn't any water in the finger at that time." Gebhardt stated that, as he started up the embankment, he pressed the throttle about one-sixteenth of its ability to move, but the engine suddenly went "wide open" causing the ATV to flip over. Gebhardt was injured in the accident.

Gebhardt filed suit against Honda,[1] alleging strict liability design defect, failure to warn, and negligence. Gebhardt endorsed Dr. Kenneth Blundell ("Dr. Blundell"), a mechanical engineer, as his expert to testify concerning the alleged design defect. Dr. Blundell earned his Ph.D. in mechanical engineering in 1977 and worked as a professor of mechanical engineering at the University of Missouri in Columbia and then Kansas City for nearly thirty years before retiring. Dr. Blundell's areas of academic interest included product design and manufacturing, and he has published academic papers in that area. Dr. Blundell also received a certificate in accident reconstruction in 1998 from Northwestern University. Dr. Blundell's education and experience did not include research or work with ATVs.

In his deposition, Dr. Blundell opined that Gebhardt's accident was likely caused by water accessing the engine and throttle position sensor, which produced a short circuit resulting in the ATV rapidly accelerating and flipping over. Dr. Blundell explained that the throttle position sensor

---

[1] The dealership that sold the ATV to Gebhardt's father was originally named in the suit, but was voluntarily dismissed by Gebhardt.

is an electrical device that "provides a voltage output that reflects the speed of the butterfly valve in the carburetor, and that output is fed back to the caliper that is at the right-hand end of the handlebars. And that is designed – voltage is designed to essentially fine-tune the speed of which the operator is desiring to travel." Dr. Blundell stated that water entering the throttle position sensor can cause the sensor to lock up and produce an issue with unanticipated speed. Dr. Blundell noted that "when Mr. Gebhardt's ATV was first examined, there was evidence of dust in the vertically mounted position sensor and 3P connector. This would show that debris and water had been present in the area of the throttle position sensor and 3P connector." Despite finding debris around the connector, Dr. Blundell conceded that there was no physical evidence that any water flowed beyond the 3P connector and reached the throttle position sensor. Dr. Blundell noted that his conclusions assumed the following: "[T]hat [the ATV] went through [the creek] and had splashed water up from underneath and that water had ingressed into an area close to the throttle sensor." Based on these assumptions, Dr. Blundell stated that "[w]hen the vehicle started to head up the slope coming out of the ditch, that water would flow downhill and, I believe, any water that got into the area underneath the seat and underneath the rubber mat would have a potential for getting into the exposed 3P connector[.]"

Dr. Blundell further opined that if water reached the throttle position sensor, there could be up to a five-volt surge. Dr. Blundell was not able to quantify the amount of water necessary to cause such a surge or, if there was a surge, whether the surge would reach five volts. Dr. Blundell could only say that water accessing the throttle position sensor "will probably put the vehicle at risk because now we've got the throttle position sensor potentially going up to five volts."

3

Dr. Blundell stated that this issue with the throttle position sensor was similar to an issue previously identified by Honda, which resulted in a recall of certain models of ATVs.[2] In 2008, Honda recalled ATVs after finding that "[w]ater can enter the right-side stop-switch wire harness and collect inside the plastic sheathing. The trapped water can seep into the wires and, over time, contaminate the throttle position sensor. Water in the throttle position sensor can freeze in cold weather and prevent the engine from returning to idle when the throttle is released." Honda addressed this issue by cutting five slits in the sheath that covered the wire harness. Dr. Blundell opined that this fix did not remedy the issue of water entering the 3P connector and short circuiting the throttle position sensor. It was Dr. Blundell's position that the vertical orientation of the throttle position sensor and 3P connector still allowed water to enter and pool inside the 3P connector and reach the sensor. Dr. Blundell stated that a horizontal mount was necessary to address the issue of water reaching the throttle position sensor.

To support his theory, Dr. Blundell recorded a video demonstration during which his wife dripped water from a syringe onto the top of a 3P connector to "see if there was a means of water overflowing from the topside to the underside of [the] connector." According to Dr. Blundell, the demonstration established that water could flow through the connector and pool in the prongs of the throttle position sensor. Dr. Blundell was not able to specifically identify the mechanism by which water would have leaked through the 3P connector on Gebhardt's ATV at the time of the accident instead indicating only that he was "believing that the two rectangular holes [on the 3P connector] …would still allow water to get down in the topside [of the throttle position sensor]." Of note, Dr. Blundell's demonstration used an exemplar 3P connector that was not attached to the receptacle that houses the throttle position sensor on an ATV. This is not insignificant because

---

[2] Gebhardt's ATV was not included in the recall models because the ATV had not left Honda at the time the recall was issued. Therefore, Honda performed the recall fix to Gebhardt's ATV before it was sold.

when the 3P connector is attached to the receptacle housing the throttle position sensor, a polymer seal operates to seal off the top of the 3P connector from the interior of the throttle position sensor.

On December 20, 2019, Honda filed a motion to exclude Dr. Blundell as an expert and a motion for summary judgment on all counts. Honda asserted that Dr. Blundell was not qualified due to a lack of specific knowledge, skill, experience, training, or education in the field of ATVs[3] and that the opinions he was offering were not reliable. Honda specifically argued that Dr. Blundell's opinions were unsupported by evidence, relied on assumptions, and no tests were completed to confirm his theories.

Following extensive argument on the motions, the trial court granted Honda's motion to exclude Dr. Blundell from testifying as an expert at trial:

> . . . Mr. Blundell is highly educated and likely qualified to testify as an expert on many issues involving mechanical engineering[; however t]here has been no showing [that] Mr. Blundell has superior or specialized training, knowledge, education, experience, or skill regarding the 2007 Honda Foreman TRX500 FPE or any other ATV. . . . [I]t has not been shown that Mr. Blundell['s] opinions are based on sufficient facts or data or [are] the product of reliable principles and methods applied reliably to this case. . . . Mr. Blundell has not performed any test to prove his theories to make his opinions reliable[,] . . . [and Gebhardt] has failed to prove Mr. Blundell is qualified to testify as an expert witness under section 490.065.2, RSMo. on the issues on which he is being offered as an expert.

Based on the exclusion of Dr. Blundell, the trial court also granted Honda's motion for summary judgment:

> . . . [A]fter review of the summary judgment pleadings and hearing the arguments of counsel, and after the exclusion of the testimony of Kenneth Blundell, the Court finds [Gebhardt], after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find that a defective design of the ATV in question caused [Gebhardt's]

---

[3] Honda argued that Dr. Blundell was not qualified because he had never been employed by a company that designed or manufactured ATVs, had never taken any courses in ATV design or manufacture, had never designed an ATV or ATV component, had never addressed the topics of ATV design or manufacture while teaching, never owned or operated an ATV, had never seen a 2007 Honda Foreman ATV in operation, had never taken an ATV safety course, had never published an article related to any ATV, had never offered testimony about the issue in this case, and makes no mention of ATV or "all-terrain vehicle" in his CV.

injuries or that there was negligence on behalf of a Defendant that was a proximate cause of [Gebhardt's] injury.

Gebhardt appeals.

## Discussion

Gebhardt raises two points on appeal. In his first point, he alleges that the trial court abused its discretion by excluding Dr. Blundell from testifying as an expert. In Point II, Gebhardt argues that the trial court erred in granting summary judgment in favor of Honda on all counts based on the alleged error in excluding Dr. Blundell as an expert witness.

### *Point I*

In Point I, Gebhardt asserts that the trial court abused its discretion when it excluded the expert testimony of Dr. Blundell, arguing that "Dr. Blundell is qualified, his testimony will assist the jury, his opinions are relevant, reliable, based on objective standards and commonly accepted methodologies within the engineering industry, and that Dr. Blundell's opinions on causation are properly stated so that they are not mere speculation or conjecture."[4]

### *Standard of Review*

"This Court reviews a circuit court's decision to admit or exclude expert testimony for an abuse of discretion." *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015) (citing *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011)). "The circuit court 'enjoys considerable discretion in the admission or exclusion of evidence.'" *Shallow*

---

[4] Gebhardt alternatively claims in the argument portion of Point I, that the trial court abused its discretion by failing to hold a *Daubert* hearing to determine Dr. Blundell's expert witness qualifications. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This is a separate claim of error distinct from (and not included in) Gebhardt's point asserting that the trial court abused its discretion by excluding Dr. Blundell as an expert witness. *See* Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). Further, this claim of trial court error is not preserved because Gebhardt did not seek a *Daubert* hearing before the trial court. *See Thomas v. Harley-Davidson Motor Co. Grp., LLC*, 571 S.W.3d 126, 137 (Mo. App. W.D. 2019) ("Missouri appellate courts have long been reluctant to convict a trial court of error when the complaining party did not seek relief from the trial court[.]").

*v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018) (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)). "A circuit court abuses its discretion when its 'ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id*. (quoting *Lozano*, 421 S.W.3d at 451).

*Analysis*

"'[T]he primary inquiry in a design defect case is whether the product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use.'" *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 792 (Mo. App. W.D. 2008) (quoting *Nesselrode v. Exec. Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo. banc 1986)). "In a design defect case, the plaintiff must demonstrate 'that the product, as designed, is unreasonably dangerous and therefore, 'defective', and that the demonstrated defect caused his injuries.'" *Id*. (quoting *Nesselrode*, 707 S.W.2d at 375-76). While expert testimony is not always required to prove a design defect, it is necessary when the alleged defect is outside the routine experience of the average juror. *See Siebern v. Missouri-Illinois Tractor & Equip. Co.*, 711 S.W.2d 935, 939 (Mo. App. E.D. 1986). The trial court properly concluded that, given the nature of the design defect alleged in this case, expert testimony was necessary.

Section 490.065, RSMo,[5] governs the admissibility of expert testimony. Relevant to this case, that statute provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;

[5] Statutory references are to the Missouri Revised Statutes, updated through the 2018 supplement.

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case[.]

§ 490.065.2(1)(a)-(d), RSMo. Section 490.065.2, RSMo, is identical to Rule 702 of the Federal Rules of Evidence. "Where Missouri law adopts language from the Federal Rules of Evidence, federal cases applying those rules are persuasive – though not binding – authority." *State v. Carpenter*, 605 S.W.3d 355, 361 n.4 (Mo. banc 2020) (citing *State v. Williams*, 548 S.W.3d 275, 285 (Mo. banc 2018)). In response to the enactment of section 490.065, RSMo, our courts have begun applying a three-part test used by several federal circuits: "(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable." *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 319 (Mo. App. E.D. 2018).

Here, the trial court found that Dr. Blundell was neither qualified in the area of ATVs nor were his opinions based on reliable principles and methods. Because we find that the trial court's determination relating to the reliability of Dr. Blundell's opinions was not an abuse of discretion, we will focus only on that prong of the three-part test.

"Under section 490.065.2, 'trial courts must act as gatekeepers to ensure that the testimony sought to be admitted . . . is 'not only relevant, but reliable.''" *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (quoting *Wright*, 562 S.W.3d at 319; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "'[R]eliability, under section 490.065.2, is determined by many factors,' including those set out in *Daubert*." *Ingham*, 608 S.W.3d at 700 (quoting *State v. Boss*, 577 S.W.3d 509, 517 (Mo. App. W.D. 2019)). The factors[6] enumerated in

---

[6] The four factors enumerated in *Daubert* to assess the reliability of scientific testimony are:

(1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of

8

*Daubert* are relevant to Missouri courts in interpreting section 490.065.2, RSMo, however, they are not controlling. *Jones v. City of Kansas City*, 569 S.W.3d 42, 53 (Mo. App. W.D. 2019) (*overruled* on other grounds). Instead, while section 490.065.2, RSMo, and Rule 702 "enumerate[ ] some considerations, the inquiry about admissibility is still intended to be flexible." *Id*. (quoting *Wright*, 562 S.W.3d at 319). "'[N]o single factor is necessarily dispositive of the reliability of a particular expert's testimony.'" *Ingham*, 608 S.W.3d at 700 (quoting *Wright*, 562 S.W.3d at 318). Ultimately, "[t]estimony is reliable if it is 'based on sufficient facts or data, reliable principles and methods and reliable application thereof.'" *Jones*, 569 S.W.3d at 54 (quoting *Wright*, 562 S.W.3d at 319).

Gebhardt claims that Dr. Blundell's testimony was reliable, emphasizing Dr. Blundell's lengthy mechanical engineering experience and arguing that his opinions concerning the alleged design defect found substantial support from Honda's 2008 recall and the incidents underlying that recall that bear similarities to Gebhardt's accident.[7] Dr. Blundell's experience in the area of mechanical engineering is both extensive and impressive, however his mechanical engineering experience alone is not sufficient to establish that the trial court abused its discretion in finding that his opinions were not sufficiently reliable to be admissible in this case.

The trial court found that there was an analytical gap between the limited data provided and Dr. Blundell's opinions. While Dr. Blundell stated that his opinions were made to a reasonable degree of mechanical engineering certainty, he did not thoroughly explain his methodology or

---

the technique or theory when applied and the existence and maintenance of standards and controls; and (4) whether the technique or theory has been generally accepted in the scientific community.

*Wright*, 562 S.W.3d at 317 (citing *Daubert*, 509 U.S. at 593-94).

[7] "In products liability cases, evidence of an accident similar in nature to that which injured the plaintiff is admissible provided the evidence is relevant and sufficiently similar to the injury-causing incident so as to outweigh the concerns of undue prejudice and confusion of the issues." *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 583 (Mo. App. W.D. 2001).

point to studies, tests, publications, or other support for his findings. *See* § 490.065.1(1)(c), RSMo ("The testimony [must be] the product of reliable principles and methods").

Instead, to fill the gap, Dr. Blundell relied, in part, upon Honda's prior recall to support his theories. This reliance, however, is problematic for two reasons. First, the issues involved in the recall were not the same as the issue Dr. Blundell asserts caused Gebhardt's accident. The Honda recall was prompted by the potential that water could collect inside the plastic sheathing on the handlebars, "seep into the wires and, over time, contaminate the throttle position sensor." This contamination could then cause the ATV to fail to return to idle if water that had reached the throttle position sensor were to freeze. In his deposition, Gebhardt testified that he had passed through water almost immediately before he started up an incline. In addition, Gebhardt testified that he applied one-sixteenth pressure on the throttle as he engaged the incline of the embankment when the ATV suddenly went "wide open" and accelerated rapidly. The sudden acceleration experienced by Gebhardt immediately after passing through water is dissimilar to the failure to return to idle following the freezing of water that "over time, contaminate[d] the throttle position sensor" that precipitated the 2008 Recall. Despite this variance, Dr. Blundell asserted that Gebhardt's situation was sufficiently similar to the problem underlying the recall, noting that the rapid acceleration experienced by Gebhardt after driving the ATV through the creek might also be attributed to water reaching the throttle position sensor.[8] However, Dr. Blundell did not perform testing or cite other studies to support his theory that water entering the 3P connector could

---

[8] Dr. Blundell did not address how water could have flowed to the 3P connector and throttle position sensor after Gebhardt crossed the creek and then immediately froze to mimic the issue in Honda's recall.

immediately corrupt the throttle position sensor or, if such immediate contamination could occur, that sudden acceleration would result.[9]

In addition to the distinctions between the issues underlying the recall and Dr. Blundell's theory, the reliability of Dr. Blundell's opinions is further compromised by the fact that they are substantially the product of assumptions and conjecture. In reaching his conclusions, Dr, Blundell "*assum*[*ed*] that [the ATV] went through [the creek] and had splashed water up from underneath [the ATV] and that water had ingressed into an area close to the throttle sensor." (emphasis added). Dr. Blundell further indicated that he "*believe*[*d*] any water that got into the area underneath the seat and underneath the rubber mat would have a *potential* for getting into the exposed 3P connector[.]" (emphasis added). Dr. Blundell then speculated that water could have accessed the throttle position sensor—despite Honda's design change and the polymer seal protecting the throttle position sensor—and if water did pool in this manner around the throttle position sensor, it could have potentially caused a surge of up to five volts. Dr. Blundell posited that the foregoing scenario could have resulted in the throttle of Gebhardt's ATV becoming "wide open" causing it to suddenly accelerate. Even if such a theory was plausible, its speculative foundation and lack of confirmatory testing, third-party validation or other facts and data buttressing the reliability of the methods applied or conclusions produced provided the trial court a sufficient basis to exclude Dr. Blundell's testimony. *See Revis v. Bassman*, 604 S.W.3d 644, 655 (Mo. App. E.D. 2020) ("An expert witness's opinion must have a rational basis and cannot be based upon mere conjecture or speculation.").

---

[9] Dr. Blundell only performed the previously described demonstration that he asserted showed that water could access the throttle position sensor; however, as previously indicated, the demonstration was performed with an exemplar 3P connector that was not attached to the receptacle housing the throttle position sensor.

Based on the foregoing, we are not able to find that the trial court's exclusion of Dr. Blundell under section 490.065, RSMo, was an abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (internal citations omitted) (stating that the trial court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Point I denied.

### Point II

In his second point, Gebhardt claims that the trial court erred in granting Honda's motion for summary judgment on all counts based on the exclusion of Dr. Blundell's expert opinions.

### Standard of Review

"Our review of the circuit court's summary judgment is *de novo*." *Johnson v. Medtronic, Inc.*, 365 S.W.3d 226, 231 (Mo. App. W.D. 2012) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "'Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting *Purcell v. Cape Girardeau Cnty. Comm'n*, 322 S.W.3d 522, 523 (Mo. banc 2010); Rule 74.04). "'A defendant may establish a right to summary judgment by showing that the plaintiff is unable to produce sufficient evidence to establish one or more of the essential elements of the plaintiff's claim.'" *Id*. (quoting *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 707 (Mo. banc 2005)).

### Analysis

Gebhardt raised three claims in his second amended petition: strict product liability design defect, negligence, and failure to warn. The circuit court granted summary judgment in favor of

Honda on all counts, finding that "after the exclusion of the testimony of Kenneth Blundell, the Court finds [Gebhardt], after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find that a defective design of the ATV in question caused [Gebhardt's] injuries or that there was negligence on behalf of a Defendant that was a proximate cause of [Gebhardt's] injury." Gebhardt concedes that the "determination of whether the [trial court] erred in granting summary judgment on all counts, including [his] claims for design defect and negligence, depends upon a review of the [trial court's] decision to exclude the expert opinions and testimony of Dr. Kenneth Blundell." Therefore, because we find in Point I that the trial court did not abuse its discretion by excluding the expert testimony of Dr. Blundell, we similarly find that the trial court did not err by granting summary judgment to Honda based on Gebhardt's failure to produce sufficient evidence supporting the elements of his claims.

Point II denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

13